**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| WILLIAM EPITER-SMITH, on behalf of himself and all others similarly situated, | Civil Action No.: |
| *Plaintiff,* | **CLASS ACTION COMPLAINT** |
| v. | |
| DENTAQUEST GROUP, INC., a Delaware corporation; DOES 1 through 10, inclusive, | |
| *Defendants.* | |

**CLASS ACTION COMPLAINT**

Plaintiff William Epiter-Smith ("Plaintiff"), individually and on behalf of all others similarly situated ("Class Members"), brings this action against Defendants DentaQuest Group, Inc. ("DentaQuest") and Does 1 through 10, inclusive ("Defendants") based upon information and belief and his own personal knowledge, and based upon, *inter alia*, the investigations of his attorneys.

**NATURE OF THE ACTION**

1.      DentaQuest is one the largest dental insurance and benefits administrator in the United States. It provides dental plans to millions of Americans through various government programs (such as Medicaid or MassHealth) and covers services ranging from routine check-ups and cleanings to filings, crowns and orthodontics. As a requirement to provide these services, DentaQuest collects, aggregates, and stores the personal identifying information ("PII")[1] and

---

[1] PII generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual. PII also is generally defined to include certain identifiers that do not on its face name an individual, but that are particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers, etc.).

protected health information ("PHI")[2] (collectively, PHI and PII will be referred to as "Private Information of millions of individuals in Massachusetts and across the country.

2.      As part of its regular business operations, DentaQuest serves as a third-party administrator and benefits administrator of healthcare programs across the country, including MassHealth. As a result, DentaQuest also collects and stores the Private Information of millions of individuals who do not have a direct relationship with DentaQuest and who never consented to it collecting and storing their information. Nevertheless, DentaQuest stored those individuals' Private Information on its systems and assumed a duty to protect it.

3.      Recently, the unauthorized third-party hacker group ShinyHunters gained access to DentaQuest's data servers and accessed, viewed and exfiltrated the sensitive Private Information of its patients, including Plaintiff and Class Members (the "Data Breach"). Based on available information, the third-party hacker group accessed and exfiltrated over 233 gigabytes of sensitive medical and personal data.[3] The types of Private Information impacted include, *inter alia*: full names, addresses, dates of birth, Social Security numbers, and health insurance and medical information.

4.      The Private Information that DentaQuest collects is subject to a framework of federal and state statutes in the United States. These regulations are designed to protect the privacy and security of sensitive information, particularly within healthcare and related industries.

5.      Under statute and regulation, DentaQuest had a duty to implement reasonable, adequate industry-standard data security policies safeguards to protect the Private Information it collected and stored from unauthorized disclosure. DentaQuest acknowledges these duties in, *inter alia*, its public-facing HIPAA Privacy Policy, wherein it states: "DentaQuest takes your privacy seriously," that "DentaQuest is required by law to…maintain the privacy of your health

---

[2] As defined by 45 C.F.R. § 160.103, PHI is defined as any individually identifiable health information that is transmitted or maintained by electronic media, or transmitted or maintained in any other form or medium.

[3] Team Ciphers Security, *ShinyHunters Breaches DentaQuest: Medicaid Dental Insurer Targeted*, Ciphers Security (June 1, 2026), https://cipherssecurity.com/dentaquest-shinyhunters-breach-medicaid-2026/ (last visited June 3, 2026).

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL

information," and "[w]e comply with all applicable state and federal laws that impact our ability to use your health information for payment and operations."[4]

6.      Plaintiff, individually and on behalf of those Class Members, brings this action to secure redress against Defendants for the reckless and negligent violation of his privacy rights. Plaintiff and Class Members are victims of the Data Breach who had their Private Information collected, stored, and ultimately breached by Defendants. Plaintiff and Class Members reasonably expected that Defendants would adhere to statute and regulation and maintain reasonable security to protect their Private Information. Had Plaintiff and Class Members known that Defendants would not do so, they would not have provided Defendants with their sensitive Private Information.

7.      Plaintiff and Class Members have suffered injuries and damages. As a result of Defendants' wrongful actions and inactions, Plaintiff's and Class Members' Private Information has been compromised. Plaintiff and Class Members have had their privacy rights violated and are now exposed to a heightened significant risk of identity theft and credit fraud for the remainder of their lifetimes. Plaintiff and Class Members must now spend time and money on prophylactic measures, such as increased monitoring of their personal and financial accounts and the purchase of credit monitoring services, to protect themselves from future loss. Plaintiff and Class Members have also lost the value of their Private Information.

8.      To date, there is no indication that Defendants have provided notice of the Data Breach to affected individuals.

9.      As a result of Defendants' wrongful actions and inactions, patient information was stolen. Plaintiff and Class Members who have had their Private Information compromised have had their privacy rights violated, have been exposed to the risk of fraud and identity theft, and have otherwise suffered damages. Plaintiff and Class Members bring this action to secure redress against Defendants for its reckless and negligent violation of their Private Information.

---

[4] *HIPAA Privacy Policy*, DentaQuest, https://www.dentaquest.com/en/policies/hipaa-privacy-policy (last visited June 3, 2026).

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL

**THE PARTIES**

10.     Plaintiff William Epiter-Smith is a citizen of the Commonwealth of Massachusetts residing in Boston, Massachusetts. Plaintiff was required to provide his sensitive Private Information to Defendants in exchange for their services.

11.     As a result of the Data Breach, Plaintiff has been placed at an increased risk of credit and identity fraud, and as a result has spent time dealing with the consequences of the Data Breach, which included and continues to include, time spent verifying the legitimacy and impact of the Data Breach, exploring credit monitoring and identity theft insurance options, monitoring his personal and financial accounts and seeking counsel regarding his options for remedying and/or mitigating the effects of the Data Breach. This time has been lost forever and cannot be recaptured.

12.     Plaintiff has suffered actual injury in the form of damage to and diminution in the value of his lost Private Information—a form of intangible property Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

13.     DentaQuest is a Delaware Corporation with its principal place of business at 96 Worcester Street, Wellesley Hills, Massachusetts 02481. DentaQuest can be served via its registered agent the C T Corporation System at 155 Federal Street, Suite 700, Boston, Massachusetts 02110.

14.     The true names and/or capacities, whether individual, corporate, partnership, associate or otherwise, of the Defendants herein designated as Does 1 to 10 are unknown to or presently being investigated by Plaintiff at this time, and Plaintiff, therefore, sues said Defendants such fictitious names. Plaintiff alleges that each named Defendant herein designated as a Doe party is negligently, willfully, or otherwise legally responsible for the events and happenings herein referred to and proximately caused damages to Plaintiff, as herein alleged. Plaintiff will seek leave of Court to amend this Complaint to insert the true names and capacities of such Defendants when they have been ascertained and will further seek leave to join said Defendants in these proceedings.

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL

**JURISDICTION AND VENUE**

15.     This Court has subject matter jurisdiction over the claims asserted herein pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million dollars, there exist over 100 putative Class Members, and there exist Class Members who are citizens of different states from Defendants, including Oregon.[5]

16.     The Court has personal jurisdiction over the Parties because Plaintiff's and Class Members' claims arise out of Defendants' business activities conducted in the State of Massachusetts and because Defendants' principal place of business is in Massachusetts.

17.     Venue is appropriate in this Court because, among other things: (a) Defendants maintains its principal place of business in this District; and (b) many of the acts and omissions, and the evidence thereof, that give rise to the claims for relief alleged in this action took place in this District.

**FACTUAL ALLEGATIONS**

**A.    The Data Breach and Defendants' Failure to Provide Reasonable, Adequate and Compliant Data Security as Promised**

18.     DentaQuest is one of the largest dental benefits providers in the United States and serves as the third-party administrator for Medicaid and CHIP dental benefits, as well as state public health programs such as Medi-cal and MassHealth. As part of its ordinary business operations, DentaQuest receives and maintains the Private Information of millions of individuals.

19.     Recently, Defendants' internal data servers were breached by the notorious third-party hacker group ShintyHunters. This group gained access to, viewed and acquired the sensitive Private Information that Defendants store in the ordinary course of business. DentaQuest has confirmed that the Data Breach occurred in a public statement posted to their website.[6]

---

[5] *See, e.g., Ileana May v. DentaQuest Group, Inc.*, Case No. 1:26-cv-12458-AK at ECF No. 1 (D. Mass. June 1, 2026).

[6] *Security Update*, DentaQuest (May 2026), https://www.dentaquest.com/en/security-update-0526 (last visited June 3, 2026).

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL

20.    ShinyHunters utilizes double extortion ransomware[7]—a tactic wherein not only is a victim's data but also accessed, acquired and exfiltrated. The third-party hackers then demand a ransom from the victim to decrypt the victim's systems coupled with threats to leak, publish or to sell the data on the dark web if their demands are not met.

21.    Based on available information, the third-party hacker group accessed and exfiltrated over 233 gigabytes of sensitive medical and personal data.[8] It then contacted DentaQuest to extort them, stating that "[y]ou wouldn't want us to describe what data and how much data was compromised publicly. It is in your best interests to reply to us or we are leaking it all by the deadline."[9]

22.    DentaQuest did not confirm payment, and data breach monitoring sources now place all 233 gigabytes of that data as having been "leaked."[10] One data breach researcher has since observed a "233GB corpus allegedly from" ShinyHunters "appearing in threat-intelligence circles."[11]

23.    The Data Breach was caused by ransomware, a type of malicious software that gains access to and encrypts a victim's data and/or locks the victim out of the victim's systems. Once ransomware has been successfully installed on a victim's data servers, a ransom payment is subsequently demanded to restore access and to prevent the release of the stolen data.

---

[7] "*What is Double Extortion Ransomware?*, SENTINELONE (Aug. 11, 2025), *https://www.sentinelone.com/cybersecurity-101/threat-intelligence/what-is-double-extortion/* (last visited June 3, 2026).

[8] Team Ciphers Security, *ShinyHunters Breaches DentaQuest: Medicaid Dental Insurer Targeted*, Ciphers Security (June 1, 2026), https://cipherssecurity.com/dentaquest-shinyhunters-breach-medicaid-2026/ (last visited June 3, 2026).

[9] *Id.*

[10] *Id.*

[11] *Id.*

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL

24. Ransomware is typically spread through phishing, malicious links, or compromised remote desktop protocols. It is also "highly preventable"[12] through the implementation of reasonable and adequate data security procedures—such as using reputable security software, maintaining software updates, maintaining data backups, and proper employee cybersecurity training. The fact that the Data Breach was caused by ransomware confirms that Defendants failed to implement reasonable and adequate data security safeguards.

25. Upon information and belief, the Data Breach occurred as a result of Defendants' failure to implement reasonable, adequate and complaint data security to protect the Private Information it had been entrusted with. Had Defendants not failed to implement such data security, the Data Breach would not have occurred.

26. Defendants recognized their duty to provide reasonable data security for Plaintiff's and Class Members' Private Information that they collect and store as part of their business practices. Defendants made promises to do so in, *inter alia*, its public-facing HIPAA Privacy Policy. Despite this, Defendants did not implement reasonable data security safeguards and protocols to protect Plaintiff's and Class Members' Private Information and instead allowed it to be disclosed to unauthorized third-party hackers without authorization or consent.

**B.    Defendants' Obligation to Protect Patient Private Information**

27. Under 201 Mass. Code Regs. §17.03, "[e]very person that owns or licenses personal information about a resident of the Commonwealth shall develop, implement, and maintain a comprehensive information security program that…contains administrative, technical, and physical safeguards that are appropriate." Likewise, 201 Mass. Code Regs. §17.04 requires that "[e]very person that owns or licenses personal information about a resident of the Commonwealth and electronically stores or transmits such information shall include in its written, comprehensive security program the establishment and maintenance of a security system covering its computers, including any wireless system" a minimum of certain security elements,

---

[12] Dr. Alan Shark, *Ransomware – Both Terrible and Preventable*, NACo (May 30, 2017), https://www.naco.org/articles/ransomware-%E2%80%94-both-terrible-and-preventable#:~:text=This%20ransomware%20threat%20is%20also,better%20than%20any%20shortsighted%20punishment (last visited June 3, 2026).

including secure user authentication protocols, secure access control measures, encryption of records and personal information, systems monitoring for unauthorized access, up-to-date system security agent software with malware protection, and proper employee cybersecurity training.

28. Additionally, as a covered entity under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936, 45 C.F.R. § 160, et seq., Defendants hold a statutory duty under HIPAA and other federal and state statutes to safeguard Plaintiff's and Class Members' Private Information.

29. Under the HIPAA Privacy Rule, Defendants are required to:

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by their workforce.

45 C.F.R. § 164. 306 (a).

30. The HIPAA Privacy Rule also requires Defendants to "review and modify the security measures implemented…as needed to continue provision of reasonable and appropriate protection of electronic protected health information" under 45 C.F.R. § 164.306(e) and to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights" under 45 C.F.R. § 164.312 (a)(1).

31. Further, the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45 prohibits Defendants from engaging in "unfair or deceptive acts or practices affecting commerce." The Federal Trade Commission (FTC) has found that a company's failure to maintain reasonable and appropriate data security for the consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.* (3rd Cir. 2015) 799 F.3d 236, 243.

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL

32.    Defendants failed to comply with each of these state and federal statutes by failing to implement and maintain reasonable security procedures to protect Plaintiff's and Class Members' Private Information from unauthorized disclosure.

**C.    Applicable Standards of Care**

33.    In addition to their obligations under state and federal law, Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in Defendants' possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer system and networks, and the personnel responsible for them, adequately protected the Private Information of Plaintiff and Class Members.

34.    Defendants owed a duty to Plaintiff and Class Members to design, maintain, and test its computer system to ensure that the Private Information in Defendants' possession was adequately secured and protected.

35.    Defendants owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the Private Information, including adequately training its employees and others on how to adequately protect Private Information.

36.    Defendants owed a duty to Plaintiff and Class Members to disclose if Defendants' computer systems and data security practices were inadequate to safeguard individuals' Private Information from unauthorized disclosure because such an inadequacy would be a material fact in the decision to provide or entrust its Private Information to Defendants.

37.    Defendants owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices. Defendants received Private Information from Plaintiff and Class Members with the understanding that Plaintiff and Class Members expected their Private Information to be protected from disclosure. Defendants knew that the unauthorized disclosure of its Private Information would cause Plaintiff and Class Members to incur damages.

9

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL

**D.    The Value of the Stolen Private Information**

38.    While the greater efficiency of electronic records translates to cost savings for entities such as Defendants, it also comes with the risk of privacy breaches. These electronic health records contain a plethora of sensitive information (e.g., patient data, patient diagnosis, lab results, medical prescriptions, treatment plans, etc.) that is valuable to cybercriminals. One patient's complete record can be sold for hundreds of dollars on the dark web. As such, Private Information is a valuable commodity for which a "cyber black market" exists in which criminals openly post stolen payment card numbers, Social Security numbers and other personal information on a number of underground internet websites.

39.    The high value of Private Information to criminals is further evidenced by the prices they will pay for them through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[13] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[14] Criminals can also purchase access to entire company data breaches from $999 to $4,995.[15]

40.    Between 2005 and 2019, at least 249 million people were affected by healthcare data breaches.[16] Indeed, during 2019 alone, over 41 million healthcare records were exposed,

---

[13]    Anita George, *Your personal data is for sale on the dark web. Here's how much it costs,* DIGITAL TRENDS (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited June 3, 2026).

[14]    Ben Luthi, *Here's What Your Data Sells for on the Dark Web*, EXPERIAN (June 30, 2025), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited June 3, 2026).

[15]    *In the Dark*, VPNOVERVIEW, *https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/* (last visited June 3, 2026).

[16]    Adil Hussain Seh, et al., *Healthcare Data Breaches: Insights and Implications*, MDPI (May 13, 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7349636/#B5-healthcare-08-00133 (last visited June 3, 2026).

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL

stolen, or unlawfully disclosed in 505 data breaches.[17] In short, these sorts of data breaches are increasingly common, especially among healthcare systems, which account for 30.03 % of overall health data breaches, according to cybersecurity firm Tenable.[18]

41.    These criminal activities have and will result in devastating financial and personal losses to Plaintiff and Class Members. For example, it is believed that certain Private Information compromised in the 2017 Equifax data breach was being used three years later by identity thieves to apply for COVID-19-related benefits in the state of Oklahoma. Such fraud will be an omnipresent threat for Plaintiff and Class Members for the rest of their lives. They will need to remain constantly vigilant.

42.    The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

43.    Identity thieves can use Private Information, such as that of Plaintiff and Class Members which Defendants failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

---

[17]  Steve Alder, *December 2019 Healthcare Data Breach Report*, THE HIPAA JOURNAL (Jan. 21, 2020), https://www.hipaajournal.com/december-2019-healthcare-data-breach-report/ (last visited June 3, 2026).

[18]  Rody Quinlan, *Healthcare Security: Ransomware Plays a Prominent Role in COVID-19 Era Breaches*, TENABLE (Mar. 10, 2021), https://www.tenable.com/blog/healthcare-security-ransomware-plays-a-prominent-role-in-covid-19-era-breaches (last visited June 3, 2026).

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL

44.     The ramifications of Defendants' failure to keep Plaintiff's and Class Members' Private Information secure are long-lasting and severe. Once Private Information is stolen, particularly identification numbers, fraudulent use of that information and damage to victims may continue for years. Indeed, Plaintiff's and Class Members' Private Information were taken by hackers to engage in identity theft or to sell it to other criminals who purchase the Private Information for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

45.     There may be a time lag between when harm occurs versus when it is discovered and also between when Private Information are stolen and when they are used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[19]

46.     The harm to Plaintiff and Class Members is especially acute given the nature of the leaked data. Medical identity theft is one of the most common, most expensive and most difficult-to-prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," which is more than identity thefts involving banking and finance, the government and the military, or education.[20]

---

[19]  *Identity Theft and the Value of Your Personal Data*, TREND MICRO (Apr. 30, 2015), https://www.trendmicro.com/vinfo/us/security/news/online-privacy/identity-theft-and-the-value-of-your-personal-data (June 3, 2026).

[20]  United States Government Accountability Office, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, REPORT TO CONGRESSIONAL REQUESTERS at 29 (June 2007), http://www.gao.gov/new.items/d07737.pdf

47.    "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[21]

48.    When cybercriminals access financial information, healthcare and medical information and other personally sensitive data—as they did here—there is no limit to the amount of fraud to which Defendants may have exposed Plaintiff and Class Members.

49.    A study by Experian found that the average total cost of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[22] Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third saw their insurance premiums rise, and 40% were never able to resolve their identity theft at all.[23]

50.    And data breaches are preventable.[24] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[25] She added that "[o]rganizations that collect, use, store, and share

---

[21]    *Id.*

[22]    *See* Elinor Mills, *Study: Medical Identity Theft is Costly for Victims*, CNET (Mar. 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/ (last visited June 3, 2026).

[23]    *Id.*; *see also* Louis DeNicola, *What Is Medical Identity Theft*, EXPERIAN (Jul. 26, 2024) https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/ (last visited June 3, 2026).

[24]    Lucy Thompson, *Despite the Alarming Trends, Data Breaches Are Preventable*, in DATA BREACH AND ENCRYPTION HANDBOOK (2011).

[25]    *Id.* at 17.

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL

sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised."[26]

51.     Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules and procedures. Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*.[27]

52.     Here, Defendants knew of the importance of safeguarding Private Information and of the foreseeable consequences that would occur if Plaintiff's and Class Members' Private Information was stolen, including the significant costs that would be placed on Plaintiff and Class Members as a result of a breach of this magnitude. As detailed above, Defendants knew or should have known that the development and use of such protocols were necessary to fulfill their statutory and common law duties to Plaintiff and Class Members. Its failure to do so is therefore intentional, willful, reckless and/or grossly negligent.

53.     Defendants disregarded the rights of Plaintiff and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly and/or negligently failing to take adequate and reasonable measures to ensure that their network servers were protected against unauthorized intrusions, (ii) failing to disclose that Defendants did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class Members' Private Information, (iii) failing to take standard and reasonably available steps to prevent the Data Breach, (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time, and (v) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

**E.      Plaintiff and Class Members Suffered Damages**

54.     The unauthorized exposure of Plaintiff's and Class Members' Private Information was a direct and proximate result of Defendants' failure to properly safeguard and protect

---

[26]   *Id.* at 28.

[27]   *Id.*

Plaintiff's and Class Members' Private Information from unauthorized access, use, and disclosure, as required by state and federal law.

55.    Additionally, the Data Breach was also a result of Defendants' failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's and Class Members' Private Information in order to protect against reasonably foreseeable threats to the security or integrity of such information, also required by their contracts and federal statute and regulation.

56.    Plaintiff's and Class Members' Private Information is private and sensitive in nature and was inadequately protected by Defendants. Defendants did not obtain Plaintiff's and Class Members' consent to disclose their Private Information, as they promised to do and as required by applicable law and industry standards. As a result, Plaintiff and Class Members have been placed at an increased risk of credit and identity fraud, for which they must now spend increased time and effort to monitor their personal and financial accounts to prevent and mitigate the resulting misuse that will almost certainly occur.

57.    As a direct and proximate result of Defendants' wrongful actions and inaction and the resulting Data Breach, Plaintiff and Class Members have lost the value of their Private Information. Private Information is a valuable commodity, as evidenced by numerous companies which purchase Private Information from consumers, such as UBDI, which allows its users to link applications like Spotify, Twitter, or Apple Health and opt-in to paid opportunities to earn income, and Brave, which uses a similar business model, and by market-based pricing data involving the sale of stolen Private Information across multiple different illicit websites.

58.    Top10VPN, a secure network provider, has compiled pricing information for stolen PII, including $160.15 for online banking details, $35.00 for credit reports, and $62.61 for passports. Standalone Yahoo email accounts have been listed for as little as $0.41, while banking logins are in the range of $500, and verified PayPal accounts with high balances are listed at as much as $2,000.

59.    In addition, Privacy Affairs, a cyber security research firm, has listed the following prices for stolen PII:

| | |
|---|---|
| U.S. driving license, high quality: | $550 |
| Auto insurance card: | $70 |
| AAA emergency road service membership card: | $70 |
| Wells Fargo bank statement: | $25 |
| Wells Fargo bank statement with transactions: | $80 |
| Rutgers State University student ID: | $70 |

60.     Defendants' wrongful actions and inaction directly and proximately caused the unauthorized disclosure of Plaintiff's and Class Members' Private Information, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a.     The improper disclosure of their Private Information;

b.     Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach; and

c.     Ascertainable losses in the form of deprivation of the value of their Private Information, for which there is a well-established national and international market.

## CLASS ACTION ALLEGATIONS

61.     Plaintiff brings this action on his own behalf and on behalf of all individuals affected by the Data Breach. Plaintiff intends to seek certification of a class initially defined as follows:

> All individuals whose Private Information was stored by Defendants and/or was exposed to unauthorized third parties as a result of the Data Breach.

62.     Excluded from the proposed class are Defendants, including any entity in which Defendants have a controlling interest, are parents or subsidiaries, or which is controlled by Defendants, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendants. Also excluded are the judge and the court personnel in this case and any members of their immediate families. Plaintiff reserves the right to amend the

16

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL

Class definition if discovery and further investigation reveal that the Classes should be expanded or otherwise modified.

63.     *Numerosity*:  The Class Members are so numerous that the joinder of all members is impractical. The disposition of the claims of Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, such as patient records.

64.     *Commonality and Predominance*: There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

i.      Whether Defendants disclosed Plaintiff and Class Members Private Information, without authorization;

ii.     Whether Defendants timely notified the patients whose information was wrongly disclosed;

iii.    Whether Defendants' notice was deficient;

iv.     Whether Defendants' conduct was negligent;

v.      Whether Defendants knew or should have known that its data security systems, policies, procedures, and practices were vulnerable;

vi.     Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendants' conduct, including increased risk of identity theft and loss of value of their Private Information;

vii.    Whether Defendants violated Massachusetts and federal statutes and regulations;

viii.   Whether Defendants were unjustly enriched by their conduct; and

ix.     Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief.

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL

65.     *Typicality*:  Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was misused and/or disclosed by Defendants.

66.     *Adequacy of Representation*:  Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff has retained competent counsel experienced in litigation of class actions, including consumer and data breach class actions, and Plaintiff intends to prosecute this action vigorously. Plaintiff's claims are typical of the claims of other Class Members and Plaintiff has the same non-conflicting interests as the other Class Members. Therefore, the interests of the Class will be fairly and adequately represented by Plaintiff and his counsel.

67.     *Superiority of Class Action*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Classes is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action. Damages for any individual Class Member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go un-remedied.

68.     Class certification is also appropriate because Defendants have acted or refused to act on grounds generally applicable to Class Members, such that final injunctive relief or corresponding declaratory relief is appropriate to the Classes as a whole.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Negligence

69.     Plaintiff repeats and incorporates herein by reference each and every foregoing allegation of this Complaint as if set forth fully herein.

70.     In 2016, the FTC updated its publication, "Protecting Personal Information: A Guide for Business," which establishes guidelines for fundamental data security principles and

practices for business. [28] Among other things, the guidelines dictate businesses should protect any personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems. The guidelines also recommend that businesses implement an intrusion detection system to expose breaches as soon as they occur; monitor all incoming traffic for activity indicating someone is attempting to infiltrate or hack the system; monitor instances when large amounts of data are transmitted to or from the system; and have a response plan ready in the event of a breach. [29] Additionally, the FTC recommends that companies limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures. [30]

71.    Defendants owed Plaintiff and Class Members a duty of care in the handling of customers' Private Information. This duty included, but was not limited to, keeping that Private Information secure and preventing disclosure of the Private Information to any unauthorized third parties. This duty of care existed independently of Defendants' contractual duties to Plaintiff and Class Members. Under the FTC Guidelines, and other sources of industry-wide cybersecurity standards, Defendants are obligated to incorporate adequate measures to safeguard and protect Private Information that is entrusted to them in its ordinary course of business and transactions with customers.

72.    Pursuant to the FTC Act (15 U. S. C. § 45), Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class

---

[28] Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personalinformation.pdf.

[29] *Id*.

[30] Federal Trade Commission, *Start With Security: A Guide for Business* (Jun. 2015) https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL

Members' Private Information. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer information, treating the businesses' failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U. S. C. § 45. Orders from these actions further clarify the measures businesses are required to undertake to satisfy their data security obligations. [31]

73.    Additional industry guidelines which provide a standard of care can be found in the National Institute of Standards and Technology's ("NIST") *Framework for Improving Critical Infrastructure Cybersecurity* (Apr. 16, 2018), https://nvlpubs. nist. gov/nistpubs/CSWP/ NIST. CSWP. 04162018. pdf. Among other guideposts, the NIST's framework identifies seven steps for establishing or improving a cybersecurity program (section 3. 2).

Those steps are:

*Step 1: Prioritize and Scope*. The organization identifies its business/mission objectives and high-level organizational priorities. With this information, the organization makes strategic decisions regarding cybersecurity implementations and determines the scope of systems and assets that support the selected business line or process. The Framework can be adapted to support the different business lines or processes within an organization, which may have different business needs and associated risk tolerance. Risk tolerances may be reflected in a target Implementation Tier.

*Step 2: Orient*. Once the scope of the cybersecurity program has been determined for the business line or process, the organization identifies related systems and assets, regulatory requirements, and overall risk approach. The organization then consults sources to identify threats and vulnerabilities applicable to those systems and assets.

*Step 3: Create a Current Profile*. The organization develops a Current Profile by indicating which Category and Subcategory outcomes from the Framework Core are currently being achieved. If an outcome is partially achieved, noting this fact will help support subsequent steps by providing baseline information.

*Step 4: Conduct a Risk Assessment*. This assessment could be guided by the organization's overall risk management process or previous risk assessment activities. The organization analyzes the operational environment in order to discern the likelihood of a cybersecurity event and the impact that the event could

[31] Federal Trade Commission, *Privacy and Security Enforcement: Press Releases*, https://www.ftc.gov/news-events/media-resources/protecting-consumer-privacy/privacy-securityenforcement.

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL

have on the organization. It is important that organizations identify emerging risks and use cyber threat information from internal and external sources to gain a better understanding of the likelihood and impact of cybersecurity events.

*Step 5: Create a Target Profile*. The organization creates a Target Profile that focuses on the assessment of the Framework Categories and Subcategories describing the organization's desired cybersecurity outcomes. Organizations also may develop their own additional Categories and Subcategories to account for unique organizational risks. The organization may also consider influences and requirements of external stakeholders such as sector entities, customers, and business partners when creating a Target Profile. The Target Profile should appropriately reflect criteria within the target Implementation Tier.

*Step 6: Determine, Analyze, and Prioritize Gaps*. The organization compares the Current Profile and the Target Profile to determine gaps. Next, it creates a prioritized action plan to address gaps – reflecting mission drivers, costs and benefits, and risks – to achieve the outcomes in the Target Profile. The organization then determines resources, including funding and workforce, necessary to address the gaps. Using Profiles in this manner encourages the organization to make informed decisions about cybersecurity activities, supports risk management, and enables the organization to perform cost-effective, targeted improvements.

*Step 7: Implement Action Plan*. The organization determines which actions to take to address the gaps, if any, identified in the previous step and then adjusts its current cybersecurity practices in order to achieve the Target Profile. For further guidance, the Framework identifies example Informative References regarding the Categories and Subcategories, but organizations should determine which standards, guidelines, and practices, including those that are sector specific, work best for their needs.

74.     In addition to their obligations under federal regulations and industry standards, Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems and networks, and the personnel responsible for them, adequately protected the Private Information of Plaintiff and Class Members.

75.     Defendants owed a duty to Plaintiff and Class Members to design, maintain, and test its internal data systems to ensure that the Private Information in Defendants' possession was adequately secured and protected.

76.    Defendants owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the Private Information in their custodianship, including ensuring that their Private Information was not being disclosed without authorization to third-party hackers.

77.    Defendants owed a duty to Plaintiff and Class Members to implement processes or safeguards that would detect an unauthorized disclosure of customer Private Information such as the Data Breach.

78.    Defendants owed a duty to Plaintiff and Class Members to timely disclose if its computer systems and data security practices were inadequate to safeguard individuals' Private Information from unauthorized disclosure because such an inadequacy would be a material consideration in Plaintiff's and Class Members' decisions to entrust their Private Information to Defendants.

79.    Defendants owed a duty to Plaintiff and Class Members to disclose in a timely and accurate manner when data breaches occur.

80.    Defendants owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices and systems. Defendants collected Private Information from Plaintiff and Class Members. Defendants knew that the unauthorized disclosure of Plaintiff's and Class Members' Private Information would cause them to incur damages.

81.    Defendants breached their duties of care to safeguard and protect the Private Information entrusted to them by Plaintiff and Class Members. Defendants adopted inadequate safeguards to protect its Private Information from unauthorized disclosure and failed to adopt industry-wide standards set forth above in its supposed protection of the Private Information. Defendants failed to design, maintain, and test its computer system(s) to ensure that the Private Information was adequately secured and protected, failed to create and implement reasonable data security practices and procedures, failed to implement processes that would detect unauthorized disclosure, and otherwise breached each of the above duties of care by carelessly allowing

unauthorized third parties to view, collect and exfiltrate Private Information, which led directly to the Data Breach.

82.    Defendants breached the duties set forth in 15 U.S.C. § 45, the FTC guidelines, the NIST's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. In violation of 15 U.S.C. §45, Defendants failed to implement proper data security procedures to adequately and reasonably protect Plaintiff's and Class Members' Private Information from unauthorized disclosure. In violation of the FTC guidelines, *inter alia*, Defendants did not protect the personal customer information that they were entrusted; lacked the requisite understanding of their own computer systems' vulnerabilities—including what Private Information that system disclosed to unauthorized third parties; and failed to implement policies to correct security problems. In violation of the NIST's Framework, Defendants, *inter alia*, failed to adopt sufficient resources to identify and address such security gaps.

83.    Defendants' failure to comply with applicable laws and regulations constitutes negligence per se.

84.    As a direct and proximate result of Defendants' failure to adequately protect and safeguard the Private Information, Plaintiff and Class Members suffered damages. Plaintiff and Class Members were damaged because their Private Information was accessed by unauthorized third-party hackers without any prior authorization. Plaintiff and Class Members have subsequently lost the value of their Private Information, as well as the benefit of their bargains with Defendants.

85.    Plaintiff and Class Members have suffered actual injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

## SECOND CAUSE OF ACTION

### Breach of Third-Party Contract

86.    Plaintiff repeats and incorporates herein by reference each and every foregoing allegation of this Complaint as if set forth fully herein.

87.    Defendants entered into contracts with its clients to provide its health and dental insurance services to those clients' own patients. Those contracts included provisions requiring that Defendants protect the Private Information of those patients and were made expressly for the benefit of those patients, including Plaintiff and Class Members.

88.    Defendants collected Plaintiff and Class Members' Private Information in connection with those contracts for its own pecuniary gain, and the benefits of the collection and protection of Plaintiff and Class members' Private Information was the direct and primary objective of the contracting parties.

89.    Defendants understood that they had a duty to protect Plaintiff and Class Members' Private Information arising from those contracts. Defendants also knew that breaching the data security provisions of those contracts would bring harm to Plaintiff and Class Members, including through the resulting misuse of their Private Information.

90.    Despite this, Defendants breached its contracts with its clients when it failed to establish reasonable and adequate data security to protect the Private Information of Plaintiff and Class Members that it had been entrusted. Defendants' breach caused Plaintiff and Class Members' Private Information to be disclosed to unauthorized third-party hackers.

91.    And a reasonable and foreseeable result of that breach, Plaintiff and Class Members were harmed, including through the loss of the value of their Private Information, their lost time that must be spent dealing with the fallout of the Data Breach, and their now substantially increased risk of suffering credit or identity fraud as a direct and proximate result of the Data Breach. Plaintiff and Class Members have suffered actual injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

## THIRD CAUSE OF ACTION

### Unjust Enrichment

92.    Plaintiff repeats and incorporates herein by reference each and every foregoing allegation of this Complaint as if set forth fully herein.

24
CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL

93.     Plaintiff and Class Members provided their Private Information and conferred a monetary benefit upon Defendants in exchange for healthcare and medical services. Defendants in turn were enriched when it pecuniarily benefited from collecting, storing and using Plaintiffs' and Class Members' Private Information to facilitate the sale of treatments and services.

94.     Defendants' enrichment came at the expense of Plaintiff and Class Members, who have now been irrevocably harmed by Defendants' failure to adequately protect the Private Information that was entrusted to them.  Defendants failed to implement safeguards to protect that Private Information despite expressly promising to do so in, *inter alia*, its public-facing HIPAA Privacy Notice.

95.     Defendants should not be permitted to retain the full benefits of Plaintiff's and Class Members' Private Information without having adequately implemented the data privacy and security procedures for itself that it promised to provide and that were otherwise mandated by federal, state, and local laws and industry standards. The principles of equity and good conscience require that Defendant be compelled to disgorge all wrongfully obtained proceeds resulting from their collection, storage and use of Plaintiff's and Class Members' Private Information.

96.     As a direct and proximate result of Defendants' wrongful actions and inactions, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial but in excess of the minimum jurisdictional requirement of this Court.

### FOURTH CAUSE OF ACTION

### Invasion of Privacy

97.     Plaintiff repeats and incorporates herein by reference each and every foregoing allegation of this Complaint as if set forth fully herein.

98.     Plaintiff and Class Members hold a legitimate expectation of privacy regarding their Private Information that was entrusted to Defendants. Plaintiff and Class Members reasonably expected that their Private Information would be protected and secured from unauthorized parties, would not be disclosed to any unauthorized parties, or disclosed for any non-authorized purpose.

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL

99.    Defendants in turn owed a duty to Plaintiff and Class members to implement reasonable and adequate data security safeguard to maintain the confidentiality of their Private Information.

100.    The unauthorized release of Private Information, especially the type related to sensitive personal and/or health information, is highly offensive to a reasonable person.

101.    The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff and Class Members disclosed their Private Information to Defendants or Defendants' clients as part of their use of Defendants' or Defendants' clients' services, but did so privately with the intention that Private Information would be kept confidential and protected from unauthorized disclosure. Plaintiff and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

102.    The Data Breach constitutes an intentional interference with Plaintiff's and Class Members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

103.    Defendants acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate and would likely result in a data breach such as the one that harmed Plaintiff and Class Members.

104.    Acting with knowledge, Defendants had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and Class Members.

105.    Defendants unlawfully invaded the privacy rights of Plaintiff and Class Members by (a) failing to adequately secure their Private Information from disclosure to unauthorized parties for improper purposes; (b) disclosing their Private Information to unauthorized parties in a manner that is highly offensive to a reasonable person; and (c) disclosing their Private Information to unauthorized parties without the informed and clear consent of Plaintiff and Class Members. This invasion into the privacy interest of Plaintiff and Class Members is serious and substantial.

106.    In failing to adequately secure Plaintiff's and Class Members' Private Information, Defendants acted in reckless disregard of their privacy rights. Defendants knew or should have

known that its substandard data security measures are highly offensive to a reasonable person in the same position as Plaintiff and Class Members.

107.    Defendants violated Plaintiff's and Class Members' right to privacy. As a direct and proximate result of Defendants' unlawful invasions of privacy, Plaintiff's and Sub-Class Members' Private Information has been viewed or is at imminent risk of being viewed, and their reasonable expectations of privacy have been intruded upon and frustrated. Plaintiff and Sub-Class Members have suffered injury as a result of Defendants' unlawful invasions of privacy and are entitled to appropriate relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all of Class Members, respectfully requests that the Court enter judgment in his favor and against Defendants as follows:

1.    For an Order certifying the Classes as defined herein and appointing Plaintiff and his Counsel to represent the Class;

2.    For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

3.    For equitable relief compelling Defendants to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety and to disclose with specificity to Class Members the type of Private Information compromised.

4.    For an award of actual damages, statutory damages, and compensatory damages, in an amount to be determined at trial;

5.    For an award of punitive and treble damages, in an amount to be determined at trial;

6.    For an award of costs of suit, litigation expenses and attorneys' fees, as allowable by law; and

27
CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL

7.      For such other and further relief as this Court may deem just and proper.


Dated: June 8, 2026                                Respectfully submitted,

                                                   */s/ Douglas F. Hartman*

                                                   _____

                                                   Douglas F. Hartman, BBO# 642823
                                                   **HARTMAN LAW, P.C.**
                                                   5 East Street
                                                   Franklin, Massachusetts 02038
                                                   617-807-0091
                                                   dhartman@hartmanlawpc.com

                                                   */s/ Jesenia A. Martinez*

                                                   _____

                                                   Thiago M. Coelho*
                                                   Chumahan B. Bowen
                                                   Jesenia A. Martinez
                                                   **WILSHIRE LAW FIRM, PLC**

                                                   **Pro Hac Vice** forthcoming

CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL